Walter J. SLAUGHTER, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**E.I. DuPont deNemours & Company, Intervenor.**

No. 85–3256.

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1986.

Decided June 27, 1986.

---

Clyde W. Summers (argued), Joseph Lurie, Morris D. Bernstein, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for petitioner.

Helen Morlan, Elaine B. Patrick (argued), Attorneys Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C. for respondent.

Peter D. Walther (argued), James A. Matthews, III, John D. Stanley, Drinker, Biddle & Reath, Philadelphia, Pa., for intervenor, John F. Lawless, E.I. DuPont deNemours & Co. Legal Dept., of counsel.

Before HIGGINBOTHAM and STAPLETON, Circuit Judges, and TEITELBAUM, District Judge.*

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is a petition for review of a supplemental decision and order of the National Labor Relations Board ("the Board") dismissing Petitioner Walter J. Slaughter's unfair labor practice complaint. 274 N.L.R.B. No. 176 (1985). For the reasons that follow, we will grant the petition for review and remand for further proceedings.

I.

On July 20, 1982, the Board issued a decision and order in this matter finding that Intervenor E.I. DuPont deNemours & Co. ("DuPont") violated § 8(a)(1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(1) (1982),[1] by discharging Petitioner from his job in a nonunion plant for refusing to submit to an investigatory interview with his supervisor without a fellow employee present, where Petitioner

reasonably believed that the interview might result in disciplinary action. The underlying facts are recounted in detail in our initial opinion in this matter. *E.I. DuPont deNemours & Co. (Chestnut Run) v. N.L.R.B.*, 724 F.2d 1061, 1063–64 (3d Cir. 1983) ("*DuPont I*"), *vacated,* 733 F.2d 296 (3d Cir.1984) ("*DuPont II*"). The Board's original unfair labor practice finding was based on its conclusion that the rule of *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975)— holding that § 7 of the Act protected an employee's right to refuse to submit to an investigatory interview without the presence of a union representative—also applied in a nonunion setting by virtue of § 7's general protection of "other concerted activities for the purpose of ... mutual aid or protection." 262 N.L.R.B. 1028 (1982) (following *Materials Research Corp.*, 262 N.L.R.B. 1010 (1982)). We held that the Board's interpretation of the Act was permissible, 724 F.2d at 1063, and accordingly enforced its order.

On February 17, 1984, while DuPont's petition for rehearing was pending, the Board moved this court to vacate *DuPont I* and remand the matter to the Board for further consideration. The Board stated that it had another case pending that presented similar issues, that it was giving additional thought to the questions involved, and that

the public interest and the interests of the parties would be better served by its considering ... this case together with the other case posing related questions, to issue decisions comprehensively addressing the questions raised in this

---

* Honorable Hubert I. Teitelbaum, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. It shall be an unfair labor practice for an employer—
    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title:
§ 7, in turn, provides:
    Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through rep-

resentatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.
29 U.S.C. § 157.

area, thereby allowing for more effective judicial review.

*DuPont II*, 733 F.2d at 297. "Mindful of the deference owed the Board's special expertise in interpreting the Act," we determined that "our discretion [was] best exercised by postponing further judicial involvement until we have been informed of a comprehensive adjudication by the NLRB." 733 F.2d at 297–98 (footnotes omitted). Accordingly, we vacated *DuPont I* and remanded the matter to the Board for reconsideration.

In *Sears, Roebuck and Co.*, 274 N.L.R.B. No. 55 (1985), the Board overruled *Materials Research*, holding that its extension of the Supreme Court's *Weingarten* decision to nonunion employees was erroneous. 274 N.L.R.B. No. 55, at 2. Following *Sears*, the Board ruled on remand that Petitioner's refusal to submit to an investigatory interview without a *Weingarten* representative[2] was not protected concerted activity and dismissed his unfair labor practice complaint. 274 N.L.R.B. No. 176, at 3–4.

## II.

In *Sears* a majority of the Board held that the Act *compels* the conclusion that nonunion employees do not enjoy the rights recognized in the *Weingarten* decision. 274 N.L.R.B. No. 55, at 3 n. 5. The reasoning of *Sears* was incorporated by reference into the Board's decision in this case. Thus, if we are to sustain the Board's action, it must be on the basis that no other interpretation of the Act is permissible, regardless of whether their order could be sustained on other grounds. *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); 3 K. Davis, *Administrative Law Treatise* § 14.29 (2d ed. 1980). Because we adhere to this Court's earlier view, stated in *DuPont I*, that *Materials Research* represented a permissible interpretation of the Act, we cannot sustain the Board's action.

## A.

In *Weingarten, supra*, the Supreme Court held permissible the Board's construction of § 7 as creating a statutory right in an employee to refuse to submit without union representation to an interview that he reasonably fears may result in his being disciplined. 420 U.S. at 260, 95 S.Ct. at 965. The Court described the "contours and limits of the statutory right," 420 U.S. at 256, 95 S.Ct. at 963, as defined by the Board in a series of decisions:

*First*, the right inheres in § 7's guarantee of the right of employees to act in concert for mutual aid and protection. *Id.*

*Second*, the right arises only in situations where the employee requests representation. 420 U.S. at 257 [95 S.Ct. at 963].

*Third*, the employee's right to request representation as a condition of participation in an interview is limited to situations where the employee reasonably believes the investigation will result in disciplinary action. *Id.* (footnote omitted).

*Fourth*, exercise of the right may not interfere with legitimate employer prerogatives. The employer has no obligation to justify his refusal to allow union representation, and despite refusal, the employer is free to carry on his inquiry without interviewing the employee, and thus leave to the employee the choice between having an interview unaccompanied by his representative, or having no interview and foregoing any benefits that might be derived from one. 420 U.S. at 258 [95 S.Ct. at 964].

*Fifth*, the employer has no duty to bargain with any union representative who may be permitted to attend the investigatory interview. 420 U.S. at 259 [95 S.Ct. at 964].

The Court identified a number of factors supporting the Board's interpretation.

---

2. There are some indications in the record that Petitioner desired a witness, as opposed to a representative. Counsel for Petitioner, however, stated unequivocally at oral argument that

what Petitioner sought was a *Weingarten* representative, as the Board so found, and our analysis proceeds on that factual premise.

First, it noted that the action of an employee seeking representation at an investigatory interview clearly constitutes "concerted activity" for "mutual aid or protection," even though the employee alone may have a stake in the outcome, since the union representative whose participation is sought would help safeguard the interests of the entire bargaining unit by exercising vigilance over the fairness and uniformity of the employer's disciplinary practices. 420 U.S. at 260–61, 95 S.Ct. at 965. The Court also suggested that the representative's presence provides an assurance to other members of the bargaining unit that they could also obtain a representative's aid and protection if called upon to attend a similar interview. 420 U.S. at 261, 95 S.Ct. at 965. The Court further observed:

> The Board's construction plainly effectuates the most fundamental purposes of the Act. In § 1, 29 U.S.C. § 151, the Act declares that it is a goal of national labor policy to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of ... mutual aid or protection." To that end the Act is designed to eliminate the "inequality of bargaining power between employees ... and employers." *Ibid.* Requiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetuates the inequality the Act was designed to eliminate, and bars recourse to the safeguards the Act provided "to redress the perceived imbalance of economic power between labor and management." *American Ship Building Co. v. NLRB*, 380 U.S. 300, 316 [85 S.Ct. 955, 966, 13 L.Ed.2d 855] (1965).

420 U.S. at 261–62, 95 S.Ct. at 966. The Court also found that the presence of a representative could assist a "fearful and inarticulate" employee to relate accurately the incident being investigated, and that the representative might be able, through informal discussion and persuasion conducted at the threshold, to discourage unjustified grievances. 420 U.S. at 262–63, 95 S.Ct. at 965.

In *Materials Research, supra,* the Board considered whether the *Weingarten* rule applied in a nonunion setting:

> The decision in *Weingarten*, of course, is framed in terms of the right to the assistance of a "union representative" at an investigatory interview. That terminology, however, was utilized because it accurately depicted the specific fact pattern presented, i.e., an employee in an organized facility requesting the assistance of her union steward, and not because the Court intended to limit the right recognized in *Weingarten* only to unionized employees. This is readily apparent from the *Weingarten* decision itself. The Court emphasized that the right to representation is derived from the Section 7 protection afforded to concerted activity for mutual aid or protection, not from a union's right pursuant to Section 9 to act as an employee's exclusive representative for the purpose of collective bargaining.... Moreover, the Court carefully differentiated the role assigned to a "representative" at an investigatory interview from that of a collective-bargaining representative acting in its representative capacity. Indeed, the term "representative" in this context is quite limited in that the role is described as acting as an assistant present "to assist the employee, and ... to clarify the facts or suggest other employees who may have knowledge of them." [420 U.S. at 260, 95 S.Ct. at 965.] In addition, the Court made it clear that the employer is free to carry on its inquiry without interviewing the employee who requests assistance, thereby leaving the employee the choice of attending the interview unaccompanied, or having no interview and foregoing any benefits that might be derived from one. Finally, to dispel any possible remaining doubt about the matter, the Court stressed that the employer has no obligation to bargain with any such "representative" who

may be permitted to attend an investigatory interview.

262 N.L.R.B. at 1012 (footnotes omitted).

The Board was also of the view that nonunion employees may have an even *greater* need for *Weingarten* representation than union employees, since they do not normally have the benefits of a collective bargaining agreement or established grievance procedures. 262 N.L.R.B. at 1014. The Board rejected the contention that the *Weingarten* right was not useful where the employee could not avail himself of an experienced shop steward:

[T]he type of assistance that any individual can provide in the situation outlined in *Weingarten* is limited and can certainly be performed by a fellow employee. A coworker can assist by eliciting favorable facts and even, perhaps, save the employer production time by helping to get to the bottom of the problem that occasioned the interview. Certainly, that an employee is not part of a represented unit does not alter the real possibility that a single employee, confronted by an employer investigating conduct which may result in discipline, may be too fearful or inarticulate to describe accurately the incident being investigated, or too ignorant to raise extenuating factors, as was noted in *Weingarten*. Indeed, without the benefit of a grievance-arbitration procedure to check unjust or arbitrary conduct, an employee in an unorganized plant may experience even greater apprehension than one in an organized plant and need the moral support of a sympathetic fellow employee. Moreover, a coworker who has witnessed employer action and can accurately inform co-em-

ployees may diminish any tendency by an employer to act unjustly or arbitrarily. 262 N.L.R.B. at 1015.

When Petitioner's unfair labor practice complaint was first before it, the Board simply incorporated the *Materials Research* holding—decided that same day—without additional analysis. 262 N.L.R.B. 1028, 1029 n. 2 (1982). On cross-petitions for review and enforcement, this court, echoing the reasoning of *Materials Research,* concluded that "the logic and reasoning of *Weingarten* carry equal force in the non-union context." *DuPont I,* 724 F.2d at 1065.[3] As noted previously, the panel subsequently vacated this opinion at the Board's request to permit reconsideration of the issues involved. *DuPont II, supra.* That reconsideration took place in the *Sears* case, *supra,* in which a majority of the Board, as then constituted,[4] overruled *Materials Research,* holding that the Act *compelled* the conclusion that "*Weingarten* rights are inapplicable where ... there is no certified or recognized union." 274 N.L.R.B. No. 55, at 2. On the basis of this turnaround in *Sears,* the Board dismissed Petitioner's complaint on remand.

### B.

The limited role of the federal courts in the administration of the Act is well-established. The Board has the primary responsibility for applying the general provisions of the Act to the complexities of industrial life. *Pattern Makers' League v. N.L.R.B.,* — U.S. —, 105 S.Ct. 3064, 3075, 87 L.Ed.2d 68 (1985). We do not sit to substitute our wisdom on the subject of labor relations for that of the Board, *Ford Motor Co. v. N.L.R.B.,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979), nor to

---

**3.** One member of the *DuPont I* majority, Judge Adams, did note that he had some reservations about the wisdom of applying *Weingarten* to nonunion settings, in particular that difficulties might arise because a nonunion coworker representative "lacks the objectivity and expertise of a union steward and because such non-union representatives do not operate under the constraints imposed by an established labor organization.... Nevertheless, in light of the Supreme Court's opinion in *Weingarten,* Judge Ad-

ams [was] unprepared to hold, despite his concerns, that the Board's decision here is inconsistent with the Act." 724 F.2d at 1065 n. 5.

**4.** The *Materials Research* majority consisted of Members Fanning, Zimmerman, and Jenkins. Chairman Van de Water and Member Hunter dissented. By the time of *Sears,* only Hunter remained on the Board.

ensure "academic consistency" in its interpretation of the Act, *DuPont II*, 733 F.2d at 297. Rather, we review its interpretations of the Act only to determine their reasonableness, *N.L.R.B. v. City Disposal Systems*, 465 U.S. 822, 104 S.Ct. 1505, 1510, 79 L.Ed.2d 839 (1984). Interpretations of the Act that are inconsistent with the statutory mandate, that frustrate the congressional policy, or that rest on an erroneous legal foundation, however, must be set aside. *N.L.R.B. v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965).

In recognition of these principles, in *DuPont I* we sustained the Board's former view that § 7 of the Act gave nonunion employees the right to a *Weingarten* representative, despite the reservations of at least one member of the majority regarding the wisdom of such a practice.[5] In further recognition of the deference owed the Board, the panel vacated *DuPont I* at the Board's request, to permit it to reconsider the issues involved. Had the Board, on remand, determined that practical considerations such as those noted by Judge Adams in *DuPont I* led it to conclude that § 7 *should* not be interpreted as extending *Weingarten* rights to nonunion employees, that determination, too, would be entitled to considerable deference, and we would have a very different case before us. But see *Finkin*, Labor Law by Boz—A Theory of Myers Industries, Inc., Sears, Roebuck and Co., *and* Bird Engineering, 71 Iowa L.Rev. 155 (1985); Note, *Extending* Weingarten *Rights to Nonunion Employees*, 86 Colum.L.Rev. 618 (1986). Instead, the Board went much further and held—in direct contradiction to *DuPont I*—that *Materials Research* reflected an *impermissible* (*i.e.*, unreasonable) interpretation of the

Act, and that the contrary result was *compelled.*

It is the Board's duty to choose amongst permissible interpretations of the Act to best effectuate its overarching goals. *See Pattern Makers' League*, 105 S.Ct. at 3076–77 (White, J., concurring). Our role is to mark out the boundaries of what the Act permits. *See Prill v. N.L.R.B.*, 755 F.2d 941, 942 (D.C.Cir.), *cert. denied sub nom., Meyers Industries v. Prill*, —— U.S. ——, 106 S.Ct. 313, 352, 188 L.Ed.2d 294 (1985). In *DuPont I* we held that *Materials Research* was within those boundaries. Though that opinion was subsequently vacated and is therefore not strictly binding on this panel, we have found nothing in the Board's opinion in *Sears*, or in its brief and argument before us now, that would lead us to conclude that our earlier view of what the Act permits was erroneous.

The overruling of *Materials Research* took place with a minimum of fanfare, the *Sears* majority simply incorporating the *Materials Research* dissent of then-Chairman Van de Water and making a few "additional observations." 274 N.L.R.B. No. 55, at 3. We discern two distinct, yet converging, lines of argument behind the Board's current position that *Materials Research* reflected an impermissible interpretation of the Act. First, they argue that *Weingarten* was premised on the right of *organized* employees to be free from "dealing with" their employer individually regarding the terms and conditions of employment, and thus is inapplicable here. Second, the Board contends that § 7 cannot be an independent source of such a right in unorganized employees, because that would be inconsistent with the principle of exclusivity embodied in § 9(a).[6]

---

5. Judge Adams and District Judge Ackerman, sitting by designation, formed the *DuPont I* majority. Judge Garth dissented on other grounds.

6. Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining

■ The Board contends, following Van de Water's *Materials Research* dissent, that the right to representation at an investigatory interview was, historically and analytically, rooted in § 8(a)(5) of the Act [7] rather than § 7, in recognition that "the unlawful interference caused by an employer's refusal of a request for a representative is the frustration of an employee's right to be free from being required to deal *individually* with the employer in a situation where the established collective-bargaining relationship mandates a right of employees to require that the employer deal with the employee's selected collective-bargaining representative." 262 N.L.R.B. at 1017 (Van de Water, Ch., dissenting) (emphasis in original). Van de Water further contended that extension of the *Weingarten* rule, illogically, gave nonunion employees a right to representation in investigatory interviews that they do not enjoy in "other employer-employee confrontations relating to terms and conditions of employment." 262 N.L.R.B. at 1019. In a persuasive response, the *Materials Research* majority stated that Van de Water erroneously relied on a pre-*Weingarten* case, *Texaco, Inc., Houston Producing Division,* 168 N.L.R.B. 361 (1967), *enforcement denied,* 408 F.2d 142 (5th Cir.1969), involving the right to union representation in an actual *disciplinary* meeting which, the Board held, affected terms and conditions of employment and thereby implicated the right to be represented by one's collective bargaining agent. The Board viewed investigatory interviews, on the other hand, "as involving only a potential for action adverse to terms and conditions of employment and, therefore, lacking any matter to which a bargaining obligation attached." 262 N.L.R.B. at 1013. *See also Weingarten,* 420 U.S. at 259–60, 95 S.Ct. at 964 ("The Board thus adhered to its decisions distinguishing between disciplinary and investigatory interviews, imposing a manda-

tory affirmative obligation to meet with the union representative only in the case of the disciplinary interview."). Thus, in the case of investigatory interviews, the employer need not bargain, and can even bypass the interview altogether. Nor does the fact that the right is specifically limited to situations where there is a reasonable apprehension of discipline demonstrate, as the Board suggests, that the employee's right is linked to the employer's bargaining obligation. That requirement was merely intended to ensure that the right would not apply "to such run-of-the-mill shop-floor conversations as, for example, the giving of instructions or training or needed corrections of work techniques." *Weingarten,* 420 U.S. at 257–58, 95 S.Ct. at 964 (quoting *Quality Mfg. Co.,* 195 N.L.R.B. 197, 199 (1972), *enforcement denied in part,* 481 F.2d 1018 (4th Cir.1973), *rev'd sub nom., ILGWU v. Quality Mfg. Co.,* 420 U.S. 276, 95 S.Ct. 972, 43 L.Ed.2d 189 (1975)). We think it is plain beyond cavil that the *Weingarten* right is rooted in § 7's protection of concerted activity, not § 8(a)(5)'s guarantee of the right to bargain collectively.

The Board also relies on *Emporium Capwell Co. v. Western Addition Community Organization,* 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975). That case involved a group of minority employees who confronted their employers directly on race discrimination issues, rather than utilizing the grievance mechanism created by their union-negotiated collective bargaining agreement. The employees argued that they were engaged in protected concerted activity within the meaning of § 7. The Court held that such activity was proscribed under § 9(a), because it constituted an attempt to bargain with the employer over the terms and conditions of employment as they affected racial minorities. The Court reasoned that the exclusive representation principle contained in § 9(a)

---

representative has been given opportunity to be present at such adjustment.
29 U.S.C. § 159(a).

**7.** It shall be an unfair labor practice for an employer ...

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.
29 U.S.C. § 158(a)(5).

and the principle of majority rule central to the Act's policy of fostering collective bargaining left no room for separate bargaining by dissident employees in a unionized workplace, but rather "extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interest of all employees." 420 U.S. at 63, 95 S.Ct. at 985 (quoting *N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967)). A contrary conclusion would undermine "the orderly collective-bargaining process contemplated by the NLRA," as well as the duly elected union's "legitimate interest in presenting a united front on this as on other issues and in not seeing its strength dissipated and its stature denigrated by subgroups within the unit separately pursuing what they see as separate interests." 420 U.S. at 69–70, 95 S.Ct. at 988. Because the minority caucus' attempt to bargain separately undermined the union's status as the exclusive bargaining representative under § 9(a), it was not a legitimate and protected exercise of § 7 rights.

The Board describes *Emporium Capwell* as standing for the broad proposition that § 7 rights are circumscribed by § 9(a), and contends that the right asserted by Petitioner conflicts with § 9(a)'s exclusivity principle. The Board's analysis misconstrues *Emporium Capwell*. That decision was grounded in the need to protect the union's § 9(a) status as the majority-elected, exclusive bargaining representative, so to assure orderly collective bargaining. It cannot, therefore, be read to hold that the § 9(a) exclusive representation rule limits the § 7 rights of non-unionized employees. Section 9(a) on its face simply defines the status and role of a union once recognized or certified as the collective bargaining representative pursuant to the wishes of a majority of bargaining unit members. *Emporium Capwell* is thus irrelevant in the setting where there is no union, no exclu-

sive bargaining representative, and no collective bargaining. This is highlighted by the fact that, as discussed above, *Weingarten* expressly held that the employer has no duty to bargain with the union representative in attendance at an investigatory interview. Board Member Hunter made this observation in his separate opinion in *Sears*,[8] stating "I am unable to understand the majority's reasoning as to how *Emporium Capwell* has any relevancy to the issue here, which, as I have noted, has nothing to do with collective bargaining." 274 N.L.R.B. No. 55, at 16.

The Board's two lines of argument begin to merge when it contends that, although there is no duty to "bargain" with a union representative at an investigatory interview, there is a duty, based on *Weingarten*, to "deal" with the representative by allowing him or her to speak, to make proposals and suggestions or to offer alternative forms of discipline. Since such functions constitute "dealing with" the employer, the argument continues, and "dealing with" an employer is a primary indicium of labor organization status as well as a traditional union function, placing a *Weingarten* representative in a non-union setting means requiring the employer to recognize and deal with the equivalent of a union representative, contrary to the Act's exclusivity principle. 274 N.L.R.B. No. 55, at 7. This, however, blurs the Act's distinction between "dealing" and "bargaining." One commentator has persuasively refuted this argument:

> The entire argument rests upon a non sequitur. A statutory labor organization is indeed one that "deals with" employers, not one that "bargains" with employers. This broader formulation was chosen to give the greatest possible reach to the Act's prohibition of company unionism. And the majority is indeed correct in observing that a single individual can qualify as a statutory exclusive bargaining representative under section

**8.** Member Hunter concurred in the Board's result, but found the denial of *Weingarten* rights to non-union workers to be a reasonable and

permissible interpretation of the Act, rather than a compulsory one. 274 N.L.R.B. No. 55, at 9.

9(a). But the system of exclusive representation, which the majority claims would be derogated from by the extension of *Weingarten* to the unorganized, is expressly one of collective bargaining, not of dealing. Accordingly, if, as the Supreme Court held, the employer has no statutory duty to bargain with the *Weingarten* representative, the function of that representative in the unorganized setting cannot be in derogation of the exclusivity principle or any other important statutory policy. And for that reason, just as Member Hunter's concurrence seemed to recognize, *Emporium Capwell* is spectacularly irrelevant to the question presented.

Finkin, *supra*, 71 Iowa L.Rev. at 182 (footnotes omitted).

We now reaffirm our previous view that under the reasoning of *Weingarten* it is at least permissible to interpret § 7 as guaranteeing union members and unorganized employees alike the right to a representative at investigatory interviews. If that interpretation is permissible under the Act, it follows that the directly contradictory view expressed in *Sears* is not compelled. Because the Board's dismissal of Petitioner's complaint was based on the erroneous premise that such a result was compelled by the Act, we must under the *Chenery* rule grant the petition for review and remand to the Board. Accordingly, we have no occasion to consider in the first instance whether the interpretation of the Act announced in *Sears* is a permissible one, or whether the Board's action might be sustained on that alternative ground. *Cf. Ewing v. N.L.R.B.*, 768 F.2d 51, 54–56 (2d Cir.1985); *Prill v. N.L.R.B.*, 755 F.2d at 942, 956–57.

Where the agency has rested its decision on an unsustainable reason, the court should generally reverse and remand even though it discerns a possibility, even a strong one, that by another course of reasoning the agency might come to the same result.... [T]he process, even though it may appear wasteful as regards the case at hand, is important for the proper execution of the legislative will, since proceeding on the right path may require or at least permit the agency to make qualifications and exceptions that the wrong one would not.

Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 197, 222–23.

## CONCLUSION

For the foregoing reasons, the petition for review will be granted and the case will be remanded to the Board for further proceedings consistent with this opinion.