645 F.2d 822
 9 O.S.H. Cas.(BNA) 1755, 1981 O.S.H.D. (CCH) P 25,395
Raymond J. DONOVAN, Secretary of Labor, Petitioner/Cross-Respondent,
v.
ROYAL LOGGING COMPANY, Respondent/Cross-Petitioner,
and
Occupational Safety and Health Review Commission, Respondent.
 Nos. 79-7622, 79-7628.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 6, 1981.
Decided May 18, 1981.
 
 John R. Bradley, Washington, D.C., for OSHRC.
 George J. Tichy, Spokane, Wash., for Royal Logging Co. and Donovan.
 On Petition to Review an Order of the Occupational Safety and Health Review Commission.
 Before WRIGHT and HUG, Circuit Judges, and EAST, Senior District Judge.*
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 This case reaches us because of an accident in Montana in which a logger was crushed to death when the tractor he was operating rolled over on him. The Occupational Health and Safety Administration (OSHA) cited the employer for failing to provide protective equipment.
 
 
 2
 On appeal from the administrative law judge's (ALJ) decision, the Occupational Health and Safety Review Commission (Commission) held that Royal Logging Co. (Royal) violated the general duty clause, § 5(a)(1) of the Act, 29 U.S.C. § 654(a)(1), by not requiring operators of earthmoving machinery, equipped with Rollover Protective Structures (ROPS), not exposed to the debris hazard, to wear seat belts. We affirm.
 
 I. FACTS
 
 3
 Royal conducts logging operations in Montana. Its heavy equipment includes caterpillar tractors or cats. "Swamp" or "pioneer" cats cut initial trails in the areas to be logged and, after logs have been cut, clear debris, small trees, and felled limbs to form an open trail. "Skid" cats drag the cut logs to the loading areas. "Brush" cats sweep the logged areas and pile debris for burning.
 
 
 4
 All cats are equipped with ROPS and most have seat belts. The ROPS prevent fatalities and serious injuries from rollovers if the operator is not thrown from the cab. Seat belts keep the operator in the cab.
 
 
 5
 Royal encourages the use of seat belts, but leaves their actual use to the operators' discretion. Operators are unwilling to wear belts because they believe the belts would restrain them from avoiding debris hurled into the cab and from jumping from the cab if the cat rolled over.
 
 
 6
 The debris includes jillpokes, sweepers, rocks, and chunks of wood. A jillpoke is a long narrow branch or tree that is broken by a moving cat and propelled spearlike toward the cab. A sweeper is a tree or branch that is caught by the cat and sweeps into the cab when released. About 12 objects enter each cab daily.
 
 
 7
 On August 25, 1975, an employee, cutting initial trails in a sloped, forested area, was found crushed under his cat. No one witnessed the accident. His machine had a seat belt, but there was no evidence to indicate whether the decedent used it.
 
 
 8
 Royal discovered the accident on August 26th and notified OSHA of it on August 27th. An OSHA compliance officer visited Royal's offices on September 5th. He discussed the accident and the use of seat belts with Royal's safety director and attorney and questioned employees and examined the cat. He did not visit the accident site.
 
 
 9
 On September 10th, the Secretary issued a citation to Royal, alleging a serious violation of 29 C.F.R. § 1926.28(a).[1]
 
 
 10
 On or about noon, August 25, 1975, the employer failed to require the wearing of appropriate personal protective equipment in an operation where there was exposure to hazardous conditions and where the use of such equipment is required by 29 C.F.R. 1926.602(a)(2)(i) to reduce the hazard to employees. (1)[2]
 
 
 11
 Part 1926 sets the safety standards for the construction industry.
 
 
 12
 Royal contested the citation and the Secretary filed a formal complaint on October 8th. It repeated the allegation in the citation with the modification that the alleged violation took place on September 5, 1975 and times prior thereto.
 
 
 13
 Five months after the inspection and four months before the hearing, the ALJ granted the Secretary's motion to amend the complaint to allege a violation of the general duty clause, § 5(a)(1) of the Act, 29 U.S.C. § 654(a)(1)[3], or alternatively, 29 C.F.R. § 1926.28(a).
 
 
 14
 At the hearing, the ALJ concluded that the standards in Part 1926 do not apply because the logging industry is not engaged in construction. He held that swamp, skid, and pioneer cat operators are not required to wear seat belts when exposed to jillpokes and sweepers, but found that Royal violated the general duty clause by not requiring operators of all other ROPS equipped machinery to wear them. He reduced the suggested fine from $500 to $200.
 
 
 15
 On review, the Commission affirmed, broadening the exemption to include all cat operators on ROPS equipped machinery exposed to the debris hazard.
 
 
 16
 The Secretary appeals the exemption of cat operators exposed to debris. Royal wishes to have the citation invalidated.
 
 II. DISCUSSION
 A. Standard of Review
 
 17
 Our review is limited to the record before the administrative judge. 29 U.S.C. § 660(a); Titanium Metals Corp. of America v. Usery, 579 F.2d 536, 540 (9th Cir. 1978). Findings of fact are conclusive if supported by substantial evidence on the record considered as a whole. Id. We may review freely questions of law.
 
 
 18
 B. Complaint, Answer, Citation, and Amended Complaint
 
 
 19
 Royal raises a number of procedural challenges. It charges that the complaint, answer, and amended complaint are unnecessary, ultra vires creatures of the Commission and that the Commission proceedings should be limited to the issues raised in the citation and notice of contest.
 
 
 20
 It also charges that the citation fails to comply with 29 U.S.C. §§ 657 and 658.
 
 1. Complaint, Answer, and Amended Complaint
 
 21
 The statute provides that the Secretary or his authorized representative shall issue a citation when they believe the employer has violated a requirement of the Act. 29 U.S.C. § 658(a). If the employer timely contests the citation, the Commission must hold a hearing and issue an order affirming, modifying, or vacating the citation. 29 U.S.C. § 659(c).
 
 
 22
 The statute does not mention a complaint, amendments to the complaint or citation, or an answer. However, 29 U.S.C. § 661(f) authorizes the Commission "to make such rules as are necessary for the orderly transaction of its proceedings." Unless it adopts different rules, "its proceedings shall be in accordance with the Federal Rules of Civil Procedure." Id.
 
 
 23
 In accordance with that mandate, the Commission promulgated Rule 33, found at 29 C.F.R. 2200.33.[4] It requires the Secretary to file a complaint with the Commission within 30 days of receipt of notice of contest. The complaint must include all alleged violations and penalties which are contested. If the Secretary seeks to amend the citation in the complaint, he must set forth reasons and state the change with particularity. The party against whom the complaint issues has 15 days to file an answer.
 
 
 24
 A regulation promulgated by OSHA "is entitled to deference unless it cannot be said to be a reasoned and supportable interpretation of the Act." Whirlpool Corp. v. Marshall 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). Because the Act expressly authorizes the Commission to promulgate its own procedural rules or proceed under the Federal Rules of Civil Procedure, requiring a complaint and answer is a reasoned and supportable interpretation of that mandate.
 
 
 25
 To accept Royal's argument that these pleadings are purposeless and outside the Commission's authority is to read sections 658 and 659 in isolation. See Southern Colorado Prestress v. OSHRC, 586 F.2d 1342, 1347 (10th Cir. 1978) (the court rejected the argument that the Federal Rules are inapplicable to the citation procedure).
 
 
 26
 Allowing amendments to the complaint and citation in accordance with F.R.Civ.P. 15 and Commission Rule 33 also comports with the intent of the Act as expressed in section 661(f). Indeed, we recently recognized that an employer
 
 
 27
 "does not have any vested right to go to trial on the specific charge mentioned in the citation or to be free from exposure to a penalty in excess of that originally proposed."
 
 
 28
 Noblecraft Industries, Inc. v. Secretary of Labor, 614 F.2d 199, 206 (9th Cir. 1980) (citation omitted).
 
 
 29
 It is settled that administrative pleadings are liberally construed and easily amended. Mineral Industries and Heavy Construction Group v. OSHRC, 639 F.2d 1289 at 1292-93 (5th Cir., 1981); Southern Colorado Prestress, supra; Usery v. Marquette Cement Mfg. Co., 568 F.2d 902, 906 (2d Cir. 1977). The most important characteristic of administrative pleadings is their unimportance. Mineral Industries, supra.
 
 
 30
 The Commission should grant freely leave to amend when justice so requires. Southern Colorado Prestress, supra; Marquette Cement, supra, 568 F.2d at 908. In addition, the Commission requires amendments to the citation to be supported by reasons and stated with particularity. 29 C.F.R. § 2200.33.
 
 
 31
 The key to denying amendment is prejudice to the non-moving party. Cornell & Co., Inc. v. OSHRC, 573 F.2d 820, 823 (3d Cir. 1978); Marquette Cement, supra. Other justification would be bad faith of the moving party or undue delay. Marquette Cement, supra.
 
 
 32
 Acknowledging the validity of the complaint and amendment process, we must ask whether the complaint and amended complaint were properly allowed.
 
 
 33
 The complaint repeats almost verbatim the allegation in the citation but changes the date of the alleged violation from August 25 to September 5, and times prior thereto. The amended complaint introduces a new legal basis, section 5(a)(1), for the alleged violation. Although neither pleading expressly amends the citation, both state the amendment with particularity and give reasons therefor, satisfying Rule 33, 29 C.F.R. § 2200.33(a)(3). It is clear that the changes are directed to the allegation in the citation. While we do not condone the Secretary's failure to state that the amendments modify the citation as well as the complaint, we
 
 
 34
 "reject the approach that pleading (in OSHA cases) is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleadings is to facilitate a proper decision on the merits."
 
 
 35
 Marquette Cement, supra, 568 F.2d at 906 (citations omitted).
 
 
 36
 The amended complaint must not result in prejudice to Royal. The Commission originally took the position that the citation must be issued within 72 hours of the time the Secretary believed it appropriate. Todd Shipyards Corp. v. Secretary of Labor, 566 F.2d 1327, 1330 (9th Cir. 1977). In Brennan v. Chicago Bridge & Iron Co., 514 F.2d 1082 (7th Cir. 1975), followed by this circuit in Todd Shipyards, the 72 hour rule was rejected. Id. An amendment is not now untimely if it falls within the six-month statute of limitations found in section 658(c), absent an actual showing of demonstrable prejudice. Id.; see also, United Parcel Service of Ohio v. OSHRC, 570 F.2d 806 (8th Cir. 1978).
 
 
 37
 The Secretary's amendment five months after the inspection and four months before the hearing was timely and there is an allegation but no showing of demonstrable prejudice.
 
 
 38
 Adding the general duty clause allegation by amendment was not prejudicial because it is based on the same set of facts as the citation. When an amendment puts no different facts in issue than did the original citation, reference to an additional legal standard is not prejudicial. Southern Colorado Prestress, supra, 586 F.2d at 1347; Cornell & Co., Inc. v. OSHRC, supra, 573 F.2d at 825 n.6.
 
 
 39
 We note that one court has held it was an abuse of discretion to disallow an amendment to charge a violation of the general duty clause when there was no bad faith or prejudice. Marquette Cement, supra, 568 F.2d at 909.
 
 
 40
 While there is a claim of prejudice here, there is no actual showing of demonstrable prejudice. The administrative law judge did not abuse his discretion in allowing the amended complaint. See Southern Colorado Prestress, supra.
 
 
 41
 C. Reasonable Promptness, Particularity and Belief
 
 
 42
 Section 658 authorizes the Secretary or his representative to issue a citation with "reasonable promptness" if either "believes" the employer violated the Act. The citation must state the violation with "particularity". Royal contends the citation violates this section. While we disapprove of the Secretary's vaguely worded citation and the bootstrapping through the amended complaint, we disagree.
 
 1. Reasonable Promptness
 
 43
 Reasonable promptness means that "(a) citation will be vacated if delay in issuance has resulted in demonstrable prejudice to the employer". Todd Shipyards, supra. As we discussed above, there is no evidence that the new allegation coming five months after the issuance of the citation prejudiced Royal.
 
 2. Particularity
 
 44
 A more serious allegation is the lack of particularity. Royal says the citation lacks particularity because it does not define "appropriate personal protective equipment" or "hazardous condition", and because it cites a construction hazard not applicable to the logging industry. Royal also challenges the Secretary's alternative pleading in the amended complaint.
 
 
 45
 The key to the particularity requirement is that the employer must have notice of precisely what he did wrong and what he must do to correct it. Noblecraft Industries, supra, 614 F.2d at 206. With respect to an alleged general duty clause violation, the importance of adequate notice goes beyond due process. Whirlpool Corp. v. OSHRC, 645 F.2d 1096 at 1101, (D.C. Cir., 1981).
 
 
 46
 "To assure that citations issue only upon careful deliberation, the Secretary must be constrained to specify the particular steps a cited employer should have taken to avoid citation, and to demonstrate the feasibility and likely utility of those measures."
 
 
 47
 Id. (quoting National Realty & Construction Co. v. OSHRC, 489 F.2d 1257, 1268 (D.C. Cir. 1973)).
 
 
 48
 The description need not be elaborate nor must the citation specify the corrective measures. Marshall v. B. W. Harrison Lumber Co., 569 F.2d 1303, 1308 (5th Cir. 1978). This citation is facially inadequate because it does not specify the hazardous condition or the means of abatement. However, it refers to construction standards, one of which states that seat belts are the required protective equipment on earthmoving machinery. 29 C.F.R. § 1926.602(a)(2)(i). It was issued after an inspector visited Royal's offices, inspected the cat, and discussed the rollover and use of seat belts with Royal's safety director and attorney.
 
 
 49
 The amended complaint specified that the protective equipment was seat belts and that the hazard was rollovers in ROPS equipped vehicles. Finally, the Secretary's interrogatories to Royal specifically asked for the names of employees who had operated motorized ROPS equipped vehicles.
 
 
 50
 Based on this evidence, we cannot say it was unfair for the administrative law judge to find that the Secretary satisfied the particularity requirement. The ambiguities and generalizations were corrected by the inspector's visit and subsequent pleadings, giving Royal fair notice of the alleged hazard and method of abatement. See REA Express, Inc. v. Brennan, 495 F.2d 822, 826 (2d Cir. 1974) (citation stating the place of employment was not free of recognized hazards complies with fair notice requirement because (1) it was issued after the compliance officer's visit to the plant where he discussed the hazard and protective equipment with company personnel and (2) the complaint which followed was fully specific); B. W. Harrison Lumber Co., supra (an insufficiently particular citation may be cured at the hearing); National Realty, supra, 489 F.2d at 1264 (any ambiguities in the Secretary's allegation can be cured at the hearing).
 
 
 51
 The citation of the construction standards, later found inapplicable, at least informed Royal that the appropriate protective equipment was seat belts.
 
 
 52
 To hold otherwise would be to ignore the rule that administrative pleadings are very liberally construed and that citations are drafted by non-legal personnel with "necessary dispatch". National Realty, supra.
 
 
 53
 Enforcement of the Act would be crippled if the Secretary were inflexibly held to a narrow construction of the citations issued by his inspector.
 
 
 54
 Id.
 
 
 55
 Nor does pleading in the alternative render the amended complaint insufficiently particular. Alternative pleading is authorized by F.R.Civ.P. 8(e)(2), made applicable to Commission proceedings by 29 U.S.C. § 661(f). It helps avoid complications or delays which are contrary to the goal of fair and speedy enforcement of the Act. See Marquette Cement, supra, 568 F.2d at 909 n.11.
 
 3. Belief
 
 56
 Royal argues that the citation is faulty because it was issued by the Area Director who did not conduct the investigation or state in the citation that his "belief" that a violation occurred was based on the inspector's report. This argument is specious.
 
 
 57
 The language in section 658 does not require the Secretary to conduct the investigation personally or to state that his belief is based on the inspector's report. The Commission found that the statute does not require the inspector to be the issuing officer.
 
 
 58
 "(T)he interpretation of a statute by the agency charged with its administration is entitled to deference by the courts." San Diego Regional Employment and Training Consortium v. Marshall, 633 F.2d 862, 863-64 (9th Cir. 1980).
 
 B. Violation of the General Duty Clause
 
 59
 OSHA contemplates that the Secretary will promulgate specific safety standards to insure safe and healthful working conditions. Bristol Steel & Iron Works v. OSHRC, 601 F.2d 717, 721 (4th Cir. 1979). The general duty clause applies when there are no specific standards. Id.; Anning-Johnson v. OSHRC, 516 F.2d 1081, 1086 (7th Cir. 1975).
 
 
 60
 "(U)nder the (general duty) clause, the Secretary must prove that (1) the employer failed to render its workplace 'free' of a hazard which was (2) 'recognized' and (3) 'causing or likely to cause death or serious injury.' " Titanium, supra, 579 F.2d at 540 (citation omitted).
 
 A recognized hazard
 
 61
 "is a condition that is known to be hazardous, and is known not necessarily by each and every individual employer but is known taking into account the standard of knowledge in the industry."
 
 
 62
 National Realty, supra, 489 F.2d at 1265 n.32. It is an objective determination. An employer need not be aware of it. Id.
 
 
 63
 A hazard likely to cause death or serious injury is shown when
 
 
 64
 evidence is presented that a practice could eventuate in serious physical harm upon other than freakish or utterly implausible concurrence of circumstances ....
 
 
 65
 National Realty, supra, 489 F.2d at 1265 n.33.
 
 
 66
 Royal contends that the Secretary failed to satisfy his burden of proof on these elements. We disagree. Substantial evidence supports both findings.[5]
 
 
 67
 The key issue is whether the Secretary proved that Royal failed to render the workplace free of the recognized hazard. To satisfy that element, the Secretary must specify the specific steps an employer should have taken to avoid the citation and demonstrate their feasibility. Id. at 1267.
 
 
 68
 The Commission found that seat belts could reduce the number of deaths and serious injury from rollovers, but it held that the feasibility showing could be rebutted by evidence that the proposed method of abatement will "cause consequences so adverse as to render their use infeasible." It found that Royal rebutted the feasibility showing with evidence that the wearing of seat belts subjects employees to greater hazard from debris.
 
 
 69
 The Secretary argues that feasibility refers only to technological and economic achievability of the proposed method to abate the cited hazard. He says the nature of the work assignment does not figure into the feasibility analysis. He contends that evidence that the proposed method will increase or create other hazards is an affirmative defense (greater hazards defense) and should not be offered in rebuttal.
 
 
 70
 The showing of a greater hazard due to compliance with specific OSHA requirements is recognized as a valid defense under certain narrow circumstances in proceedings to enforce specific standards. E. g., Southern Colorado Prestress, supra, 586 F.2d at 1351; General Electric Co. v. Secretary of Labor, 576 F.2d 558, 560 (3d Cir. 1978). However, whether this defense exists or is necessary in § 5(a)(1) litigation is a question of first impression.
 
 
 71
 We agree with the Commission that this defense does not apply in general duty clause proceedings. Rather, in such actions, the Secretary bears the burden of showing that the proposed safety measure will not result in a greater hazard as part of his obligation to demonstrate feasibility.
 
 
 72
 Although feasibility requires that a measure be technologically and economically possible, the Secretary must also prove the utility and practicability of the precaution. The standard for judging the safety measure is whether it meets these criteria, as recognized by safety experts familiar with the pertinent industry. National Realty, supra, 489 F.2d at 1266. See also Voegele Co. v. OSHRC, 625 F.2d 1075, 1080 (3d Cir. 1980); Magma Copper Co. v. Marshall, 608 F.2d 373, 377 (9th Cir. 1979); General Dynamics v. OSHRC, 599 F.2d 453, 464 (1st Cir. 1979). This requires the agency and the Commission to consider prevailing industry customs and practices.[6] To fail to do so is error. Voegele, supra.
 
 
 73
 Here, the Secretary demonstrated adequately the economic and technological achievability of using seat belts on ROPS equipped machinery. But he failed completely to show the utility of this method within the context of the logging industry. His safety expert professed no familiarity with that industry.
 
 
 74
 Although he opined that a cat operating on a 40 degree slope would likely result in a rollover, he had no knowledge of the concurrent debris hazard or the working conditions under which loggers operate the cats. In contrast, several loggers testified that seat belts restrained them from responding quickly to the frequent debris hazard. Royal's experts testified that the industry consensus is that seat belts should not be worn when an operator is exposed to the debris hazard.
 
 
 75
 The Secretary's comparison between the construction and logging industries ends with the type of equipment used. The working conditions under which the cats are employed differ drastically. While a construction cat operator usually works on level ground, the logging operator constantly battles uneven, steep, forested terrain. Consequently, the utility or feasibility of the safety equipment on the cats varies significantly. The Commission wisely chose not to ignore reality.
 
 
 76
 We note also that the Secretary was given an opportunity to continue the hearing to produce evidence answering Royal's rebuttal, but declined. His error, based on his erroneous belief that the greater hazards defense applies to general duty clause litigation, and that feasibility does not require his inquiry into the nature of the work assignment, was unfortunate and ill-advised.
 
 
 77
 Finally, substantial, unrebutted evidence supports the Commission's finding that the wearing of seat belts exposes operators of ROPS equipped cats encountering debris to a hazard commensurate with the rollover hazard. The record shows debris enters a cab approximately 12 times a day and that operators must move quickly, even jumping from the cab, to avoid it. A seat belt makes it more difficult for the operators to avoid debris.
 
 
 78
 Some Royal witnesses opined that death could occur from being struck by a jillpole or sweeper. Spearlike jillpokes can enter the cab either from the direction in which the cat has been traveling or at an angle, and have been known to tear open the seats. At least one Royal employee has been injured by debris flung into his cab. Royal's experts testified that the use of seat belts during skidding and swamping would increase the death or serious injury rate and that the consensus in the industry is that seat belts should not be worn.
 
 
 79
 C. Evidence, Vagueness and Constitutionality
 
 
 80
 Royal's other arguments for reversal are meritless.
 
 1. Admissibility of Evidence
 
 81
 Royal argues that (1) proof submitted as to dates other than that given in the citation should have been disregarded because the statute does not authorize the complaint or amended complaint, and (2) proof obtained from discovery depositions and interrogatories should have been disallowed because the Secretary gave no reasons to support its motion and Royal had an inadequate opportunity to respond.
 
 
 82
 Because the complaint and amended complaint are proper, evidence relevant to dates and matters alleged therein is admissible.
 
 
 83
 Depositions and interrogatories are allowed by special order of the Commission or ALJ, 29 C.F.R. § 2200.53. The responding party has ten days to respond to the motion for discovery. 29 C.F.R. § 2200.37.
 
 
 84
 The Secretary filed his motion for leave to file interrogatories on December 30, 1975. The ALJ granted the motion on December 31st. Without objection to the motion, Royal answered the interrogatories on January 20, 1976.
 
 
 85
 The Secretary filed a motion for leave to take depositions on February 17th. Royal responded and objected on February 27th. The ALJ granted the motion on March 1st.
 
 
 86
 There was no error in allowing the discovery.
 
 2. Vagueness
 
 87
 Royal charges that § 5(a)(1) and 29 C.F.R. § 1926.28(a) are void for vagueness because they do not define "appropriate protective equipment", "recognized hazards", or "likely to cause death or serious injury". The challenge to § 1926.28(a) is moot because that regulation does not apply to the logging industry.
 
 
 88
 Nor does the challenge to section 5(a)(1) succeed. "(W)hether or not a statute is unconstitutionally vague must be assessed in the context of the particular conduct to which it is being applied." United States v. Dacus, 634 F.2d 441, 444 (9th Cir. 1980). To be struck down for vagueness, a statute or regulation must fail " 'to give a person of ordinary intelligence fair notice that his contemplated conduct' " is forbidden. Id., quoting Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).
 
 
 89
 Any statute imposing general obligations, such as the general duty clause, raises certain problems of fair notice. See National Realty, supra, 489 F.2d at 1268 n.41. But these problems dissipate when we read the clause as applying when a reasonably prudent employer in the industry would have known that the proposed method of abatement was required under the job conditions where the citation was issued. See Schriber Sheet Metal & Roofers, Inc. v. OSHRC, 597 F.2d 78, 79 (6th Cir. 1979).[7]
 
 
 90
 In the context of this case, this provision gives an ordinary person notice that the recognized hazard is a rollover, that it is likely to cause death or serious injury, and that the required protective equipment is a seat belt.
 
 3. Constitutionality of the Act
 
 91
 Royal's allegation that OSHA is unconstitutional is specious. In Noblecraft Industries, this court recently found this challenge has been "repeatedly rejected". 614 F.2d at 206.
 
 III. CONCLUSION
 
 92
 This case demonstrates how the Secretary can let enforcement of OSHA and its regulations get out of hand. Rather than issue a citation after due deliberation and consideration of the logging industry, he issued a vaguely worded citation based on the report of an inspector unfamiliar with logging. Amendments, changed legal theories, and the Secretary's failure to meet his burden of proof resulted. Both Royal and the agency expended needless time and money pursuing some aspects of the case.
 
 
 93
 While we recognize that the mandate of OSHA is to attempt to deal with the overwhelming problem of occupational accidents and diseases, we are not a rubber stamp for its efforts.
 
 
 94
 AFFIRMED.
 
 
 
 *
 Of the District of Oregon
 
 
 [1]
 29 C.F.R. § 1926.28 Personal protective equipment. (a) The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees
 
 
 [2]
 29 C.F.R. § 1926.602 Material handling equipment
 (a) Earthmoving equipment; General
 (1) These rules apply to the following types of earthmoving equipment; scrapers, loaders, crawler or wheel tractors, bulldozers, off-highway trucks, graders, agricultural and industrial tractors, and similar equipment. The promulgation of specific rules for compactors and rubber-tired "skid-steer" equipment is reserved pending consideration of standards currently being developed.
 (2) Seat belts. (i) Seat belts shall be provided on all equipment covered by this section and shall meet the requirements of the Society of Automotive Engineers, J386-1969, Seat Belts for Construction Equipment. Seat belts for agricultural and light industrial tractors shall meet the seat belt requirements of Society of Automotive Engineers J333a-1970, Operator Protection for Agricultural and Light Industrial Tractors.
 
 
 [3]
 29 U.S.C. § 654. Duties of employers and employees
 (a) Each employer
 (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.
 
 
 [4]
 29 C.F.R. § 2200.33 Employer contests
 (a) Complaint. (1) The Secretary shall file a complaint with the Commission no later than 20 days after his receipt of the notice of contest.
 (2) The Complaint shall set forth all alleged violations and proposed penalties which are contested, stating with particularity:
 (i) The basis for jurisdiction;
 (ii) The time, location, place and circumstances of each such alleged violation; and
 (iii) The considerations upon which the period for abatement and the proposed penalty on each such alleged violation is based.
 (3) Where the Secretary seeks in his complaint to amend his citation or proposed penalty, he shall set forth the reasons for amendment and shall state with particularity the change sought.
 (b) Answer. (1) Within 15 days after service of the complaint, the party against whom the complaint was issued shall file an answer with the Commission.
 (2) The answer shall contain a short and plain statement denying those allegations in the complaint which the party intends to contest. Any allegation not denied shall be deemed admitted.
 
 
 [5]
 The record shows (1) safety experts in the construction industry believe seat belts should be worn when operating machinery equipped with ROPS; (2) a 20% grade (18 degrees) may cause a cat to rollover and Royal's operators frequently work on slopes of 40.5 degrees; (3) Royal provided seatbelts in most of the cats and encouraged their use; (4) Royal personnel recalled at least 20 rollovers, many resulting in serious injury or death; and (5) that the case began when a Royal cat operator was killed during a rollover
 
 
 [6]
 We do not suggest that an employer or an industry may be excused from an obligation under the general duty clause just because it is the custom of the industry to omit a certain precaution. However, the practice of an industry is relevant in assessing feasibility
 
 
 [7]
 The general obligation imposed by section 5(a)(1) is analogous to that imposed by 29 C.F.R. § 1926.28(a). This interpretation of section 5(a)(1) is also analogous to that given to the current version of section 1926.28(a), which has been found not unconstitutionally vague. See Ray Evers Welding v. OSHRC, 625 F.2d 726, 731 (6th Cir. 1980) and cases cited therein. But see, Hoffman Construction Co. v. OSHRC, 546 F.2d 281 (9th Cir. 1976) (the 1972 version of section 1926.28(a) is unconstitutionally vague; the court expressly reserved comment on the current version)