801 F.2d 926
 55 USLW 2203, 12 O.S.H. Cas.(BNA) 2135,
1986-1987 O.S.H.D. ( 27,690
 William E. BROCK, Secretary of Labor, Petitioner,
v.
DOW CHEMICAL U.S.A., an Operating Unit of the Dow Chemical
Co., a Corp. and Occupational Safety & Health
Review Commission, Respondents.
DOW CHEMICAL U.S.A., Petitioner,
v.
SECRETARY OF LABOR, Respondent.
 Nos. 85-2541, 85-2545.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 6, 1986.
Decided Sept. 16, 1986.
 
 Sandra Lord, Dept. of Labor, Washington, D.C., for petitioner.
 Robert Moran, Washington, D.C., for respondents.
 Before CUDAHY and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 The Secretary of Labor ("Secretary") conducted a health inspection of the employer's facility. Following the inspection, the Secretary cited the employer for willfully failing to record cases of employee injury or illness. An Administrative Law Judge ("ALJ") found the employer liable for some incidents, but not others. The Secretary petitioned this court for enforcement, with modifications, of the ALJ's order, and the employer cross-petitioned for review. The primary question we will decide is whether the employer had fair notice of the incidents it allegedly failed to record. For the reasons stated below, we will grant the employer's petition for review, and deny the Secretary's, and hold that, as a matter of law, the pleadings and documents given the employer in discovery were insufficient to constitute formal notice. We will remand to the Secretary for a determination whether discussions between the Secretary and the employer, prior to and following the issuance of the citation, gave the employer actual notice of the incidents at issue.
 
 
 2
 * The Occupational Safety and Health Act of 1970 ("Act"), codified as amended at 29 U.S.C. Secs. 651-678, requires the Secretary to "compile accurate statistics on work injuries and illnesses which shall include all disabling, serious, or significant injuries and illnesses, whether or not involving loss of time from work, other than minor injuries requiring only first aid treatment and which do not involve medical treatment, loss of consciousness, restriction of work or motion, or transfer to another job." 29 U.S.C. Sec. 673(a); see also id. Secs. 657(g)(1), 673(e). Section 657(c)(2) provides that the Secretary (in cooperation with the Secretary of Health and Human Services) "shall prescribe regulations requiring employers to maintain accurate records of, and to make periodic reports on" such injuries and illnesses. In addition, Sec. 657(c)(1) requires "[e]ach employer ... [to] make, keep and preserve, and make available to the Secretary ..., such records regarding his activities relating to this chapter as the Secretary ..., may prescribe by regulation as necessary or appropriate for the enforcement of this chapter or for developing information regarding the causes and prevention of occupational accidents and illnesses."
 
 
 3
 The Secretary delegated authority to the Assistant Secretary of Labor for Occupational Safety and Health ("Assistant Secretary") to carry out the Department of Labor's safety and health programs. The Secretary also delegated authority to the Commissioner of the Bureau of Labor Statistics ("Commissioner") to develop a program of occupational safety and health statistics. 29 C.F.R. Sec. 1904.20(a); Sec.'s Order 12-71, 36 Fed.Reg. 8754 (1971); Sec.'s Order 8-76, 41 Fed.Reg. 25,059 (1976); Sec.'s Order 9-83, 48 Fed.Reg. 35,736 (1983). In 1971, the Secretary issued regulations governing recordkeeping and the reporting of occupational injuries and illnesses under the Act. 29 C.F.R. Secs. 1904.1-1904.22. Amendments to these regulations were subsequently issued by the Assistant Secretary and the Commissioner.
 
 
 4
 29 C.F.R. Sec. 1904.2(a) requires employers to "maintain ... a log and summary of all recordable occupational injuries and illnesses.... For this purpose form OSHA No. 200 or an equivalent which is as readable and comprehensible to a person not familiar with it shall be used. The log and summary shall be completed in the detail provided in the form and instructions on form OSHA No. 200." 29 C.F.R. Sec. 1904.12(c) defines "recordable occupational injuries or illnesses" as "any occupational injuries or illnesses which result in":
 
 
 5
 (1) Fatalities, regardless of the time between the injury and death, or the length of the illness; or
 
 
 6
 (2) Lost workday cases, other than fatalities, that result in lost workdays; or
 
 
 7
 (3) Nonfatal cases without lost workdays which result in transfer to another job or termination of employment, or require medical treatment (other than first aid) or involve: loss of consciousness or restriction of work or motion. This category also includes any diagnosed occupational illnesses which are reported to the employer but are not classified as fatalities or lost workday cases.
 
 
 8
 29 C.F.R. Sec. 1904.12(e) defines "first aid" as:
 
 
 9
 [A]ny one-time treatment, and any followup visit for the purpose of observation, of minor scratches, cuts, burns, splinters, and so forth, which do not ordinarily require medical care. Such one-time treatment, and followup visit for the purpose of observation, is considered first aid even though provided by a physician or registered professional personnel.
 
 
 10
 On January 31, 1984, pursuant to authority granted the Secretary under 29 U.S.C. Sec. 657(a) and (c), an OSHA compliance officer conducted an inspection of Dow Chemical's ("Dow") facility at Joliet, Illinois. The compliance officer requested that Dow produce copies of its Form 200 reports for the years 1981-1983. Upon examining these forms, the officer discovered that Dow had reported no occupational injuries or illnesses during that period. Dow then produced, at the officer's request, copies of its internal record keeping forms used for workmen's compensation claims. The compliance officer concluded that these documents indicated that a number of those injury incidents were "recordable" within the meaning of the Act. At a conference following the inspection, the officer discussed some, or perhaps all, of these incidents with Dow.
 
 
 11
 On March 26, 1984, the Secretary, pursuant to 29 U.S.C. Sec. 658(a), cited Dow for willfully failing, in violation of 29 C.F.R. Sec. 1904.2, to record injury and illness cases. The citation did not list the individual incidents that the Secretary contended should have been recorded. Dow contested the citation, whereupon the Secretary, pursuant to 29 U.S.C. Sec. 659(c), advised the Occupational Safety and Health Review Commission ("Commission") of the dispute. On May 9, 1984, Dow received a copy of the Secretary's complaint. Like the citation, the complaint also did not list any particular cases. A hearing was held before an ALJ on December 17 and 18, 1984. The ALJ, in his order and decision of June 5, 1985, found that, of the fifteen incidents presented by the Secretary at the hearing, four were recordable within the meaning of the Act and eleven were not. The ALJ also found that the evidence of record was insufficient to support the charge that Dow had acted willfully in not recording the four incidents. He ordered Dow to pay a penalty of $100.00. Both parties filed petitions for review with the Commission. The Commission adopted the ALJ's order as the final order of the Secretary on July 12, 1985. The Secretary's petition for enforcement, with modification,[1] and Dow's petition for review followed.
 
 II
 
 12
 The citation issued by the Secretary against Dow read in relevant part:
 
 
 13
 The violations described in this citation are alleged to have occurred on or about the day the inspection was made unless otherwise indicated within the description given below.
 
 
 14
 29 CFR 1904.2(a): The log and summary of occupational injuries and illnesses (OSHA Form No. 200 or its equivalent) was not completed in the detail provided in the form and the instructions contained therein:
 
 
 15
 (a) OSHA recordable injury and illness cases were not entered onto the OSHA 200 as required.
 
 
 16
 Dow argues (1) that the citation did not satisfy the requirement of 29 U.S.C. Sec. 658(a) that "[e]ach citation ... shall describe with particularity the nature of the violation" (emphasis added) and (2) that neither the subsequent pleadings or discovery documents, nor discussions between Dow and the Secretary both before and after the issuance of the citation, afforded Dow "fair notice" of the specific incidents that the Secretary deemed recordable or the reasons why the Secretary thought they should have been recorded.
 
 
 17
 The Secretary contends that, because the disputed injury cases had been individually discussed with Dow during the opening and closing conferences following the Secretary's on-site inspection, and once again at a conference, held at Dow's request, subsequent to the issuance of the citation, Dow had actual notice of the disputed incidents. In addition, the Secretary argues that specific incidents were noted both on documents that the Secretary delivered to Dow in June of 1984 (in response to Dow's request for documents) and in interrogatories propounded by the Secretary on November 19, 1984 (but denied by the ALJ). Finally, the Secretary observed that particular cases were referred to in the subpoena duces tecum that the Secretary served on Dow on December 10, 1984, and in the Secretary's responses to Dow's request for admissions. These responses were served on Dow on December 14, 1984, the first day of the two-day hearing before the ALJ. The Secretary concludes that "Dow had ample notice of the particular injuries at issue in order to adequately prepare and present its defense." Reply Brief at 4.
 
 
 18
 It is, of course, well settled that administrative pleadings are to be liberally construed and amended. Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575, 585 (D.C.Cir.1985); National Realty & Construction Co. v. OSHRC, 489 F.2d 1257 (D.C.Cir.1973); NLRB v. International Union of Operating Engineers, Local 925, 460 F.2d 589 (5th Cir.1972); NLRB v. Pallette Stone Corp., 283 F.2d 641 (2d Cir.1960); cf. NLRB v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959). This is particularly true for citations issued under the Act, for these are drafted by non-legal personnel who are required to act with dispatch. See, e.g., Babcock & Wilcox Co. v. OSHRC, 622 F.2d 1160, 1164 (3rd Cir.1980); National Realty & Construction Co., 489 F.2d at 1264. To hold inflexibly the Secretary to a narrow construction of the language of a citation would unduly cripple enforcement of the Act. Donovan v. Williams Enterprises, Inc., 744 F.2d 170, 177 (D.C.Cir.1984); National Realty & Construction Co., 489 F.2d at 1264. Similarly, allowing amendments to a citation's charges, in appropriate circumstances, does not disturb its central function of alerting a cited employer that it must contest the Secretary's allegations or pay the proposed fine. Id. at 1264 n. 31.
 
 
 19
 That administrative pleadings are to be liberally construed does not, however, obviate the need for particularity in the statement of the charge against a cited employer. Donovan v. Royal Logging Co., 645 F.2d 822, 828 (9th Cir.1981); Noblecraft Industries, Inc. v. Secretary, 614 F.2d 199, 206 (9th Cir.1980); Cornell & Co. v. OSHRC, 573 F.2d 820 (3rd Cir.1978); see also 29 U.S.C. Sec. 658(a). Administrative pleadings must afford the cited employer a fair opportunity to prepare and present a defense. See, e.g., Baroid Division of NL Industries, Inc. v. OSHRC, 660 F.2d 439, 448 (10th Cir.1981); Babcock & Wilcox Co., 622 F.2d at 1164; L.G. Balfour Co. v. FTC, 442 F.2d 1, 19 (7th Cir.1971); Swift & Co. v. United States, 393 F.2d 247, 252 (7th Cir.1968). A citation thus must be drafted with sufficient particularity to inform the employer of what he did wrong, i.e., to apprise reasonably the employer of the issues in controversy. Royal Logging Co., 645 F.2d at 828; Noblecraft Industries, 614 F.2d at 206; L.G. Balfour Co., 442 F.2d at 19; Swift & Co., 393 F.2d at 252.
 
 
 20
 The description in the citation of the allegedly violative conduct need not be elaborate, nor must the citation specify the necessary corrective measures. See, e.g., Royal Logging Co., 645 F.2d at 828; Marshall v. B.W. Harrison Lumber Co., 569 F.2d 1303, 1308 (5th Cir.1978); L.G. Balfour Co., 442 F.2d at 19. To the contrary, courts have held that ambiguities and generalizations in the citation may be clarified by subsequent pleadings and discussions between the agency and the cited employer regarding the particulars of the citation. See, e.g., Royal Logging Co., 645 F.2d at 828; Ringland-Johnson, Inc. v. Dunlop, 551 F.2d 1117, 1118 (8th Cir.1977); REA Express, Inc. v. Brennan, 495 F.2d 822, 826 (2d Cir.1974); Swift & Co., 393 F.2d at 252. Indeed, we have held that "[t]here is no requirement that a complaint in an administrative proceeding enumerate precisely every event to which a hearing examiner may finally attach significance." L.G. Balfour Co., 442 F.2d at 19. The requirement that administrative pleadings are drafted with sufficient particularity to afford the cited employer notice of the charges against it strikes a balance between the reluctance to transform administrative pleading into a game of skill, in which one misstep may be decisive to the outcome, and a recognition that procedural due process in administrative proceedings requires notice and the opportunity to be heard. See, e.g., Royal Logging Co., 645 F.2d at 827; Usery v. Marquette Cement Manufacturing Co., 568 F.2d 902, 906 (2d Cir.1977).
 
 
 21
 However, it must be noted that, unless the employer demonstrates that the lack of formal notice was prejudicial, we will not order that the charges be dismissed. See, e.g., Simplex Time Recorder Co., 766 F.2d at 585; Dye Construction Co. v. OSHRC, 698 F.2d 423, 425 (10th Cir.1983); H.S. Holtze Construction v. Marshall, 627 F.2d 149, 153 (8th Cir.1980); Noblecraft Industries, Inc., 614 F.2d at 206; L.G. Balfour Co., 442 F.2d at 19; Swift & Co., 393 F.2d at 252. If, for example, the amendment of a citation puts no different or additional facts into issue, reference to an additional legal rule might very well not be prejudicial. Williams Enterprises, Inc., 744 F.2d at 177; Royal Logging Co., 645 F.2d at 827; Southern Colorado Prestress v. OSHRC, 586 F.2d 1342, 1347 (10th Cir.1978); Cornell & Co., Inc., 573 F.2d at 825 n. 6 (3rd Cir.1978). In addition, "an issue litigated at an administrative hearing may be decided by the hearing agency even though the formal pleadings did not squarely raise the issue," so long as the cited party had actual notice and a fair opportunity to litigate the issue. National Realty & Construction Co., 489 F.2d at 1264; see also NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 350, 58 S.Ct. 904, 912, 82 L.Ed. 1381 (1938); Golden Grain Macaroni Co. v. FTC, 472 F.2d 882, 885-86 (9th Cir.1972); L.G. Balfour Co., 442 F.2d at 19, 21; Swift & Co., 393 F.2d at 252. Finally, unless an employer shows prejudice, a variance between a complaint or citation and the ALJ's order does not warrant vacating that order. Babcock & Wilcox Co., 622 F.2d at 1164; Swift & Co., 393 F.2d at 252. Thus, the dispositive question is not simply whether the pleadings are adequate as a formal matter, but rather whether the procedure afforded the cited employer as a whole was fair.[2] See Aloha Airlines, Inc. v. CAB, 598 F.2d 250, 262 (D.C.Cir.1979).
 
 
 22
 We turn then to the question whether Dow had fair notice, either actual or formal, of the nature of the charges against it. The ALJ in his order and decision neither analyzed nor addressed this issue. He observed, however, that:
 
 
 23
 The OSHA inspector reviewed [Dow's injury report] records and, after conferring with Dow officials, concluded that 15 incidents reflected by Dow's records during the three-year period should have been listed on form 200.
 
 
 24
 Dow disagreed. It maintained that none of the 15 incidents were recordable. It contended that the regulation permits exceptions to recording and that each of the 15 instances was exempt from recording by reason of one or another of the exceptions.
 
 
 25
 This observation is inadequate to qualify as an express ruling on Dow's defective notice argument.[3] Although, the ALJ states that Dow disagreed with the Secretary's position, there is no indication the ALJ is referring to events occurring before or at the hearing. Indeed, appearing at the beginning of his order as it does, the ALJ's statement is more accurately described as a summary of the positions taken by the parties at the hearing than a finding of fact bearing on the issue of notice.
 
 
 26
 It is axiomatic that, unless a matter crucial to his order falls outside the permissible bounds of choice for an agency, such that we can find it proper or improper as a matter of law, we may not uphold an order on the basis of facts or reasoning upon which the ALJ himself did not expressly rely, even if such facts or reasoning are supported by substantial evidence in the record. Bowen v. American Hospital Association, --- U.S. ----, 106 S.Ct. 2101, 2113, 90 L.Ed.2d 584 (1986); FTC v. Indiana Federation of Dentists, --- U.S. ----, 106 S.Ct. 2009, 2016, 90 L.Ed.2d 445 (1986); SEC v. Chenery Corp., 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943) ("Chenery I "); Slaughter v. NLRB, 794 F.2d 120, 122, 127-128 (3rd Cir.1986); Prill v. NLRB, 755 F.2d 941, 947-48 (D.C.Cir.1985). One of the fundamental justifications for the administrative process is that an agency possesses an expertise in a particular subject area that the judiciary, as it is presently structured, cannot acquire at an acceptable cost. That justification does not come into play in a particular case unless the agency has in fact applied its expertise. Thus, part and parcel of our deference to agency findings and interpretations is the "responsibility of the agency to explain the rationale and factual basis for its decision." Bowen, 106 S.Ct. at 2113. Were it not for the administrative law principle that an agency's decision must stand or fall upon the particular rationale the agency has chosen, see, e.g., FTC v. Indiana Federation of Dentists, 106 S.Ct. at 2016; Chenery I, 318 U.S. at 95, 63 S.Ct. at 462, it would be difficult, if not unworkable, for a reviewing tribunal to ensure the proper execution of the legislative will through agency action. For an agency to "proceed[ ] on the right path may require or at least permit the agency to make qualifications and exceptions that the ... [reviewing tribunal] would not." Slaughter, at 128, quoting Friendly, Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders, 1969 Duke L.J. 197, 222-23. Thus, unless we find that a particular conclusion is compelled as a matter of law, we may not pass upon an issue de novo, but must rather remand it to the appropriate agency for that agency's determination. To do otherwise, would "propel ... [this] court into the domain which Congress has set aside exclusively for the administrative agency." SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) ("Chenery II "); see NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 442-444, 85 S.Ct. 1061, 1063-1065, 13 L.Ed.2d 951 (1965).
 
 
 27
 After an examination of the record before us, we hold that, as a matter of law, the pleadings, complaint, and documents received by Dow through discovery were insufficient to afford Dow formal notice of the incidents it would have to defend against at the hearing. The citation was facially inadequate: it listed neither the particular incidents to be recorded nor the Secretary's reasons for their recordability. The Secretary's complaint was couched in similarly vague and general terms and shed no light on the factual basis for the Secretary's citation.[4] In addition, as the discussion that follows explains, the documents filed during discovery, standing alone (or together with the citation and complaint) were inadequate to provide Dow with formal notice. Because the formal notice given Dow by the citation and subsequent documents filed with the agency did not satisfy minimum due process requirements, there is no need first to obtain the agency's ruling on the matter.
 
 
 28
 We turn now to a consideration of the documents filed in the instant case. On May 25, 1984, several months in advance of the hearing, Dow filed a "Motion for a More Definite Statement," in which it stated that:
 
 
 29
 [T]he Citation and Complaint are so vague, ambiguous and indefinite that Respondent is unable to either frame a responsive pleading and prepare its defense to the charge, or to understand what it is being charged with. The defects result from the absence of the particulars set forth below--information which Respondent needs prior to filing an Answer.
 
 Among the particulars Dow requested was:
 
 30
 An identification of each recordable injury or illness case allegedly not entered onto the OSHA 200 Form and the calendar date it occurred.
 
 
 31
 The Secretary opposed Dow's motion, arguing that the citation and the complaint, standing alone, satisfied the "fair notice" requirement. Dow subsequently requested documents from the Secretary relating to, inter alia, reports prepared in connection with the inspection and "upon which the charges in this proceeding are based." The Secretary claimed in response that the reports were privileged.
 
 
 32
 On June 29, 1984, Dow filed a "Motion for Leave to Propound Interrogatories." In its motion Dow stated that:
 
 
 33
 [T]he Citation at issue does not describe the nature of the alleged violation(s) with particularity as required by 29 U.S.C. Sec. 658(a). That the allegations in this case are so vague and ambiguous that Respondent is unable to fully comprehend the charges or prepare an adequate defense. And, though Respondent has tried to obtain a clear statement through prior discovery, that effort has been unsuccessful.
 
 
 34
 Proposed interrogatory 14(a) read as follows:
 
 
 35
 For each recordable injury and illness case which allegedly was not entered onto the OSHA 200 form, state ... [t]he particular factual reason or reasons why the same should have been so entered, for example, because it was work-related, resulted in loss of consciousness, restriction of work or motion, transfer to another job, required medical treatment, etc.
 
 
 36
 On August 31, 1984, the Secretary filed its answers to Dow's interrogatories. To interrogatory 14(a), the Secretary replied:
 
 
 37
 Complainant objects to this Interrogatory on the ground that the information is already in Respondent's possession and was in fact furnished by the Respondent to the compliance officer and rubber-stamped by the Respondent as "Dow Confidential."
 
 
 38
 The Secretary's answer apparently refers to the fact that Dow had supplied the Secretary's compliance officer with certain accident and injury reports. The Secretary's inspector did not conclude that all such reports disclosed recordable incidents, nor do we know how many such forms were given him. Without knowledge of which reported incidents formed the basis of the Secretary's charge or which incidents the Secretary intended to pursue at the hearing, this "notice" was clearly overinclusive.
 
 
 39
 On September 14, 1984, Dow filed a motion to strike, inter alia, the Secretary's answer to interrogatory 14(a) on the ground that the answer was evasive and incomplete. The Secretary argued that his answer indicated that the incidents at issue were those involving persons whom Dow had sent to doctors "and paid for their medical treatment " (emphasis in the original). The Secretary did not suggest, however, nor did Dow have any reason to conclude, that all, and only, those cases involving employees injured on the job, sent to doctors, and who had their medical bills paid by Dow were to be pursued by the Secretary at the hearing. Indeed, it appears that there were a number of cases fitting the description given by the Secretary in his answer that he did not consider recordable. The ALJ, on October 1, 1984, denied Dow's motion to compel a more specific answer to interrogatory 14(a), and denied its motion to propound a second set of interrogatories.
 
 
 40
 On November 19, 1984, the Secretary requested, inter alia, "[a]ny and all medical records for each of the employees named in Complainant's Interrogatories to Respondent." The interrogatory referred to contained a list of 18 employees. The ALJ denied the Secretary's request for the production of documents and his request to propound the interrogatories on the ground that, despite the ALJ's continuance of the hearing for 60 days, the Secretary did not initiate discovery promptly.[5]
 
 
 41
 That a list of 18 employees was included in the Secretary's proposed interrogatories does not, by itself, warrant the conclusion that Dow had fair notice of the cases against which it should prepare to defend. Of course, the interrogatory indicated that the Secretary was interested in these eighteen incidents, and sought further information concerning them. In the same set of interrogatories, however, the Secretary also requested information concerning all of Dow's employees since January 1, 1980, who had suffered back injuries or who had been assigned to restricted or light duty. In addition, the Secretary requested the names of all employees who had been assigned to restricted or light duty since January 1, 1980. Finally, the Secretary asked Dow for all "Workers' Compensation claims filed against Respondent during the period January 31, 1984 [sic]," including the dates, names of claimants, and nature of the injury or illness involved. Hence, the Secretary requested information regarding a considerable number of employees. Taken in context, the specific interrogatory containing the list of 18 names was inconclusive at best. The notice arguably afforded Dow by this interrogatory was widely overinclusive, and hence, inadequate to satisfy the requirement of fair notice.
 
 
 42
 On November 27, 1984, Dow filed a request for admissions. Admission 6(a) listed 19 individual incidents, and requested that the Secretary admit that these were the relevant incidents. Request for admission 6(e) asked the Secretary to acknowledge that Dow had voluntarily supplied the Secretary with its internal injury forms for each of these incidents "and for a number of similar instances" prior to the issuance of the citation. In his response, the Secretary admitted that the 19 incidents formed the basis of his charge against Dow. The Secretary also admitted that Dow had given him a number of other injury report forms. Dow did not, however, receive a copy of the Secretary's response to its requested admissions until midway through the first day of the two-day hearing. Thus, the Secretary's admissions were received by Dow far too late into the proceedings to constitute fair notice. We conclude then that the pleadings and discovery documents were, as a matter of law, inadequate to afford Dow formal notice of the incidents it had to defend at the hearing.
 
 
 43
 The issue remains to be considered, however, whether the discussions between the Secretary and Dow, taken alone or in conjunction with the pleadings and discovery documents, gave Dow actual notice of the issues in controversy. After a thorough examination of the record, we are unable to hold that these discussions either did or did not so apprise Dow as a matter of law. Thus, this is a question that we must remand to the Secretary for his initial determination. See, e.g., Pratt & Whitney Aircraft Co. v. Secretary, 649 F.2d 96, 106 (2nd Cir.1981). Nevertheless, because of the importance and complexity of the issue, we find it appropriate to provide the ALJ with guidelines to resolving this issue.
 
 
 44
 We note first that the Secretary bears the burden of establishing that the notice given Dow, whether formal or actual, satisfied minimum due process requirements. 29 C.F.R. Sec. 2200.33; National Realty & Construction Co., 489 F.2d at 1263. In passing on this question, the ALJ may look to the answers Dow and the Secretary filed in the administrative proceedings, the briefs and proposed findings, and to the testimony presented at the hearing. Baroid Division of NL Industries, Inc., 660 F.2d at 449; Swift & Co., 393 F.2d at 252; Cella v. United States, 208 F.2d 783, 789 (7th Cir.1953), cert. denied, 347 U.S. 1016, 74 S.Ct. 864, 98 L.Ed. 1138 (1954). It may be possible, for example, for the ALJ to infer from the evidence and testimony Dow presented at the hearing that Dow was given notice and a full and fair opportunity to litigate the issues in controversy. The ALJ, in drawing such an inference, must, however, be sensitive to Dow's argument that it would have called either the employees or physicians involved in the particular incidents had it known prior to the hearing which cases the Secretary intended to pursue. See, e.g., Royal Logging Co., 645 F.2d at 828; REA, 495 F.2d at 826; Swift & Co., 393 F.2d at 252.
 
 
 45
 If "fair notice" is to have any meaning, it must be understood to require the charging agency at some point in the pleadings or discovery to disclose to a respondent the crucial facts upon which the agency bases its charges and upon which it intends to rely at the hearing. Carson Products Co. v. Califano, 594 F.2d 453 (5th Cir.1979). That point must be enough in advance of the hearing to afford the respondent a meaningful opportunity to prepare a defense. In the instant case, it is true that the Secretary pursued no cases at the hearing that were not mentioned in his proposed interrogatory, which the ALJ refused to allow the Secretary to propound. Yet, unless the discussions between Dow and the Secretary provide a reasonable basis for the conclusion that the Secretary delineated with some acceptable precision the particular cases he intended to press at the hearing, this "notice" was overinclusive, and did not afford Dow an unambiguous statement of the cases which the Secretary intended to present at the hearing. Nor is it clear that the Secretary spelled out the reasons why each incident was recordable. Because a particular incident may be recordable under the Act for any of a number of reasons, 29 C.F.R. Sec. 1904.12(c), Dow without this information would be unable to prepare adequately a defense.
 
 
 46
 There was testimony to the effect that Dow discussed some cases with the Secretary before and after the issuance of the citation. The question whether these discussions afforded Dow actual notice of the incidents it would have to defend at the hearing is a very close one. Indeed, there is some indication in the record that the Secretary himself did not know exactly which incidents he was going to bring forth at the hearing until after the proceeding had begun. In addition, Dow argues that it was prejudiced by the allegedly defective notice, because, had it known which cases the Secretary intended to pursue and the reasons the Secretary concluded that each incident was recordable, it could have called either the affected employees or their attending physicians to demonstrate that the reason given for recordability by the Secretary was, as a factual matter, unpersuasive. Nevertheless, Dow did not ask the ALJ for a continuance. We also note, however, that the Secretary could have easily provided Dow with a recitation of the reasons and factual circumstances upon which he based his citation, and a list of the particular incidents he intended to pursue at the hearing. The present controversy could have been avoided entirely if the Secretary had devoted sufficient time to the preparation of this case to answer adequately Dow's interrogatories and requests for admissions. In any event, the relative weight to be assigned these and any other factors relevant to the determination whether Dow had actual notice is a matter for the ALJ to resolve in the first instance.[6]
 
 
 47
 In sum the record before us is inconclusive on the issue whether the discussions between Dow and the Secretary afforded Dow actual notice of the incidents it would have to address at the hearing. We have neither a transcript of, nor affidavits relating to, the contents of these discussions. In addition, as we noted above, the testimony concerning the discussions is ambiguous. The Secretary has the burden of establishing fair notice, whether formal or actual. There is simply no record from which we can say whether the burden has been satisfied.
 
 III
 
 48
 For the reasons stated above, we GRANT Dow's petition for review, DENY the Secretary's, and REMAND to the Commission with instructions to REMAND to the ALJ for a determination, consistent with this opinion, whether Dow was afforded fair notice of the charges against it. Each party is to bear its own costs on appeal.
 
 
 49
 SO ORDERED.
 
 CUDAHY, Circuit Judge, concurring:
 
 50
 Although I think it was more than likely that, from various ancillary sources suggested in the majority opinion, Dow had actual notice of the cases with which the Secretary was concerned, I have no real objection to remand to determine whether the apparent lack of formal notice in the citation or in the complaint was prejudicial. The Secretary should not be encouraged to become slipshod in what may be important matters of procedure. I have the impression here that at times both sides were playing games, but certainly that can be clarified on remand.
 
 
 51
 I assume that, if the notice question is resolved in the Secretary's favor, he may raise again the question of sufficiency of the evidence to support the ALJ's determination that eleven of the incidents questioned by the Secretary were not recordable. In this respect, the Secretary has made a persuasive case on this appeal. It may not be probative that Dow recorded no occupational injuries or illnesses among a work force of several hundred people over three years, but it is not surprising that OSHA should vigorously pursue an investigation of such apparently unusual circumstances.
 
 
 52
 These alleged recordkeeping violations are not trivial. I should think that adherence to the Secretary's recordkeeping prescriptions is central to the purposes of OSHA, and it is important that administrative and judicial enforcement procedures not become so cumbersome that the recordkeeping requirements become a dead letter.
 
 
 
 [1]
 The Secretary argues that the ALJ's determination that 11 incidents were not recordable within the meaning of the Act is unsupported by substantial evidence, and hence, seeks modification of the ALJ's decision on this matter. Yet, because of our disposition of this case, we do not reach the question whether the ALJ's findings regarding any of the disputed incidents are supported by substantial evidence
 
 
 [2]
 An employer must also demonstrate prejudice before a citation will be set aside due to the inspector's failure to follow established inspection procedures. Pullman Power Products, Inc. v. Marshall, 655 F.2d 41, 44 (4th Cir.1981); see also Chicago Bridge & Iron Company v. OSHRC, 535 F.2d 371, 377 (7th Cir.1976). Absent a showing of prejudice, the omission of the inspection date on the citation does not vitiate the sufficiency of the notice. Ringland-Johnson, Inc., 551 F.2d at 1118
 
 
 [3]
 We note that the ALJ also stated in his order that "[o]ther exculpatory arguments offered by Dow, including a statute of limitations defense and lack of proof of employer knowledge, have been considered and found to be without merit." Yet, we do not understand how these sweeping remarks can be taken to mean that the ALJ considered Dow's due process argument and found it to be without merit
 
 
 [4]
 The Secretary's complaint alleged at Section IV(a):
 Respondent, at the aforementioned workplace on or about the dates identified as inspection dates in the attached Citation(s), violated the Act, as set forth in the Citation(s) and Notification(s) of Penalty attached hereto, made a part hereof, and marked Exhibit A.
 
 
 [5]
 On October 19, 1984, the Secretary had requested that the ALJ postpone the hearing, scheduled for October 23. As grounds for his request, the Secretary stated that he needed additional time for discovery. The ALJ granted the Secretary's request, and set the hearing for December 17, 1984. Nonetheless, the Secretary did not initiate discovery until November 19, 1984, approximately one month prior to the hearing
 The Secretary, on December 3, 1984, requested that the ALJ reconsider his denial of the Secretary's proposed interrogatories and request for the production of documents. As grounds for reconsideration, the Secretary indicated that his attorneys had been involved in other, more pressing litigation that required a large amount of discovery, and that the compliance officer, who had inspected Dow's facility, was unavailable for a period of time, which hampered the Secretary's ability to frame discovery. The ALJ denied the Secretary's motion for reconsideration on December 5, 1984.
 Whatever litigation pressures the Secretary may have been under during the period immediately subsequent to the continuance of the hearing date, does not, of course, excuse its failure to answer Dow's interrogatories concerning the exact incidents forming the basis of the Secretary's citation and complaint or his belated response to Dow's request for admissions. We do not see why a straightforward answer to Dow's questions would have placed an unfair burden on the Secretary. We do conclude, however, that the failure to do so was procedurally unfair to Dow.
 
 
 [6]
 Dow also argues that the language of the citation limits the relevant time period during which the alleged violations occurred to within six months prior to the issuance of the citation. The ALJ should consider the merits of this argument in deciding whether Dow had actual notice of the disputed incidents